The next case on the calendar is Madera v. Rabsatt. Good morning, Your Honors. May it please the Court, my name is Paul Lyons, and I represent a respondent appellant. If I may, I'd like to reserve two minutes for rebuttal. To avoid a miscarriage of justice and in the interests of federal-state comedy, this Court should reverse the grant of the writ and review the sufficiency of the evidence supporting Petitioner's robbery conviction. The magistrate judge's report was patently erroneous, concluding on a cold record that eyewitness Angela Crevy's testimony was not credible. The district court compounded this error by abruptly issuing the writ just four days after the deadline for filing objections. Abruptly? I mean, there's something wrong with that? I mean, sometimes courts are criticized for taking too long. The time for objections had come and gone, and so the judge ruled. What's the proper amount of time that the district court should have waited? Well, it was abrupt in conjunction with what else happened, Your Honor. There's nothing wrong with doing it immediately, especially because the case was on the docket for four years. But it was a sudden, unconditional writ. And then when we moved for an extension, the court simply brushed us off and refused to look at the merits of this patently erroneous report that we pointed out flagrant errors in. And the court basically said, you don't even have an appeal. We're done. You moved for an extension of time after the deadline had run, and I was struck in your submissions, your request for an extension, that neither yours nor your supervisor's acknowledged that the notices from November 16th and November 22nd explicitly said that the deadline was November 29th. The themes sounded in your letters were that there was a miscalculation and that it was the Thanksgiving holiday. And in fact, the November 16th notice was a week before the Thanksgiving holiday and said explicitly that the deadline was November 29th. Why wasn't the district court totally entitled to rely on that? Your Honor, this was my mistake, and the district court could rely on it. You didn't acknowledge in your letters, I was disappointed that you did not acknowledge in your letters that the notice, first that you received the notice of November 16th, and second, that that notice said itself explicitly that the due date was November 29th. You presented an excuse that you had miscalculated the due date, but the due date was set forth in the notice itself. I think some context is necessary. I got back from Thanksgiving holiday just like yesterday. Wait a second. It was November 16th. It was a week before Thanksgiving. Right. That the notice of November 16th was distributed. And then the November 22nd notice came. But if we just focus on November 16th, you acknowledge that you received that. Oh, yeah. I calendared. Yes, Your Honor. And did you notice that it said the deadline was November 29th? I didn't notice that at the bottom. It's a slight thing at the bottom. I based my date on the entry date and the date it came. You didn't read the whole notice. Right. Okay. The mistake is all mine, Your Honor. I think the misunderstanding is that when we sent this first letter, when I first got the issue of the writ, which was sudden, four days after, that's why I mentioned it, it was rather sudden, four days after the expiration of the date. I've never done something like this before. I'm 60. I've been practicing this many years. I've never blown a date like this. So nausea overcame me and sort of a panic. I went to my supervisor, and we agreed we had to draft a letter that immediately asked for a stay before a petitioner was released. Now, that letter could have been obviously drafted more clearly. I was just trying to explain how and why I made this stupid mistake. I wasn't trying to deny that I made the mistake. So the fact that I also didn't notice that there was at the bottom of the notice said July 29th. On the July 20th. I'm sorry. November 29th. On the November 22nd notice. Yeah, I also missed that. We were not disputing that November 30th was actually the due date. I was just trying to explain how I made this stupid mistake. But the court took umbrage. The court's finding of bad faith is based solely on that letter. So this court is in just as good a position as the district court to decide. In any event, it is . . . I don't think anyone disputes these are unusual circumstances. And that this court has the authority to excuse the objection waiver in the interest of justice. The key factor . . . It's difficult, yes. Even assuming that the magistrate judge erred in its analysis. Is your argument that because there was an error in the magistrate judge analysis, it must be in the interest of justice for us to excuse the waiver? Because I don't think that that follows necessarily. No, Your Honor. I mean that's . . . I think it's certainly the most important factor. And the cases seem to say that. The key factor is whether the party . . . the appellants argue in a substantial merit. Or put another way, whether the report is plainly erroneous. Here we have just a patently erroneous report. But on top of which, we do have a lot of other factors that make this an odd situation. The court doesn't have to make some sort of sweeping declaration or change in the law. You have the people making . . . the state is making the error.  And there's this . . . the other main point, I guess, is comedy. Which is . . . the case is exceptional because granting the writ here violates comedy. Inflicting severe repercussions that are totally out of proportion to this mistake of a few days. I mean the repercussions include nullifying a proper state jury conviction. Giving petitioner the windfall of a wrongful conviction claim against the state. I didn't understand that when I read it in your brief. We have a magistrate's report and a record showing a failure to object by the state. I'm not sure I see how that results in a successful wrongful conviction lawsuit. Well, it might not be successful, Your Honor, but it's pretty clear. And we made the assertion in our opposition, and it wasn't rebutted, that counsel has this case for a homeless man because counsel believes that there could be a wrongful conviction claim. I'm not saying they're going to win, but certainly the state is going to have to defend against that. And that's just like rubbing salt in the wound. You're talking about a multi-million dollar claim because he's been in for eight years. And if he claims, he's actually innocent. I mean, the worst part of the comedy violation, though, is that he's being released into the community. He's a predicate violent felony offender, has 19 prior convictions. He served almost eight years of a 10-year sentence. He was homeless for a protracted period. My understanding was that those prior convictions were for minor nonviolent matters. The one violent felony you referred to involved possession of a firearm that, frankly, didn't strike me as particularly. He never assaulted anyone with it. And so are you arguing that he poses a present danger, having been released into the community right now? Well. And if so, based on these dated actions, right? Well, we're second-guessing the state here. And comedy is a rather strong interest. And I think you're ignoring also the five years of post-release supervision. He's been released into the community without any state supervision. So that's essentially two years of prison, five years of post-release. He's seven years. He should have been under state supervision. He's got free. Has anything happened since he's been released? Not that I know of. But I think counsel, who has an interest in keeping him clean, has gotten him a job, got him housing. But we can't rely on that. This should be state supervision. That's the state's job, for seven years, to supervise this man, who has had trouble, a lot of trouble over the years. And he is a predicate violent felony offender. There's no two ways about that. I see my time is up, Your Honor. Good morning, Your Honors. May it please the Court. I'm Jacob Loop. I represent the petitioner appellee, Fernando Madera. First, Judge Carney, you asked what Mr. Madera has been up to since he was released almost an entire year ago. He has been working, washing dishes at a synagogue. It's a matter of public record that he has not been arrested or charged with any crime since then. And he did that entirely on his own. We had nothing to do with it, to answer your question. None of that's in the record before us. None of that is in the record, but since Judge Carney asked . . . I noticed. You made mention of it in your brief, and that's what prompted the question. I understand. Invoking the interest of justice exception in this case would set a very dangerous precedent, because it would signal that this court tolerates the kind of conduct that the state engaged in here. As counsel for the state acknowledged, the district court found that the state had acted in bad faith in seeking to overcome the consequences of its default. Could you address . . . As I read the magistrate judge's report and recommendation, it was clearly incorrect. This was a Jackson claim. All inferences are to be drawn in favor of the jury's verdict. And it seemed like from the get-go, the magistrate judge articulated an erroneous legal standard and then presumed to apply it throughout the report and recommendation. Well, looking at plain error, Your Honor, the first . . . Plain error, of course, has four factors. The first two asking whether there was clear or obvious error. And when you look at the magistrate's report, and we lay this out in some detail in our brief, some of the language was, again, unclear. But if you look at the report as a whole, the magistrate cited and recited the operative language governing Jackson claims. He wrote that at special appendix page 32 that he couldn't overturn this conviction merely because the federal habeas court would have reached a different conclusion in the first instance. He noted that he could only reverse the state court's decision, this is at special appendix page 27, if the conclusion of that court was objectively unreasonable. That is the standard. Asking whether the magistrate committed error that was plain, that's not made out here. But most importantly, the plain error, which is among other factors that this court looks at when deciding to invoke whether or not to exercise its discretion to invoke the exception, plain error, that error, assuming there was an error, is unreversible unless this court also goes on to find that the error seriously affected the fairness, integrity, public reputation of judicial proceedings. The true danger here to the fairness and integrity of judicial proceedings would be, again, for this court to put its stamp of approval on the conduct of the state here. And to do that would also violate the purposes of the Federal Magistrates Act and it would undermine the district court's ability to efficiently administer its docket as envisioned by the Supreme Court when it said in Thomas v. Arnn that the waiver rule was a Are you saying in determining whether manifest injustice requires the reinstatement of the conviction or at least allowing the state to challenge the R&R, albeit belatedly, that we should overlook Mr. Madera's criminal history and your adversary just recited a litany of criminal convictions? What's your view about that? Well, as Your Honor pointed out, there was only one felony on the record and it was from the year 2000, which was 11 years before the underlying conviction in this case. It was for a simple gun possession. It didn't involve any kind of using it against anybody. And then there was an attempted assault, which was a misdemeanor after that in 2001. From 2001 until 2010 when Mr. Madera was arrested for an open container violation, actually, the 18 prior convictions are all precisely the kind of convictions of offenses that you see on the record. Unfortunately, of so many homeless people in New York City. Trespassing, turnstile jumping, marijuana possession. So any talk about the dangers that Mr. Madera poses now is really very speculative and particularly given that he's already been out of prison for a year. And again, it's a matter of public record that he hasn't been arrested since then. So I would just say that those dangers are very speculative. I just wanted to highlight that unless I heard it wrong, I believe counsel for the state indicated that he had calendared the November 16th notice. And that was never in the record anywhere before. So in light of that, the level of negligence is, and unfortunately bad faith, as the district court found, I think is particularly egregious here. I just want to be clear with you. We're talking about a couple of days, right? So what Ms. Kowalski said in her letter to the court was that the state would not object if a petitioner mistakenly missed such a due date by a few days and sought a similar extension. Do you think that that's inaccurate? I think that that's probably inaccurate, Your Honor. Probably inaccurate, you said? I think that the state, if I understood your question correctly, I think you're asking whether or not it was accurate that the state in most circumstances would grant an extension to a habeas petitioner who asked for an extra four days. Right. I think that's likely inaccurate. The state is typically quite inflexible about taking advantage of EDPA deadlines. And we cite a couple of different cases where the state has taken the issue to the Supreme Court, trying to ensure that prisoners can't take advantage of the mailbox rule in habeas cases. Well, but this is discretionary, right? This is not a situation where there's a statute that sets a date by which things have to come in. So I'm just asking about whether or not . . . Do you think it's going to be ultimately bad for petitioners if the rule is hell or high water? We're enforcing deadlines, and if you're late, man, you're out of luck. Well, the fact is that this Court's precedents, the relatively small list of cases in which the Court has exercised its, as you say, discretion to excuse . . . You're talking about the Court of Appeals. Yeah, this Court. I mean, district courts would routinely say, a couple of days, no big deal. So maybe we should get to the pioneer factors and get to the second argument that the state has here, which is that this was an abuse of discretion to deny this opportunity for objections to an R&R that does appear to be problematic on its face. Okay, well, let me answer your first question first, Your Honor, about just the number of days. First of all, this Court and the Supreme Court have said repeatedly that even an extension of one day under many circumstances is intolerable. As this Court said in, I believe it was Sillivanch, the legal system would groan under a regiment of uncertainty in which time limitations were not rigorously enforced. I think more importantly, this case is a lot easier for you, despite that concern that you're raising. Again, given the state's bad faith, I mean, to set a precedent here . . . What was the bad faith? What was to be gained by the misinformation that Judge Torres found? Well, as I read the district court's opinion, which seems correct to me, the bad faith, the purpose of the bad faith was, and this is at Special Appendix, page 73, to give the false impression that Respondent had been notified of the deadline to object a week later than he in fact had. I mean, it was simply to . . . it was to give an excuse that I think that hopefully the Court would find plausible. But, of course, given what was on the docket, the Court found that it wasn't. What was on the docket was wrong, too, right? It wasn't November 29th. That wasn't the due date. It was actually November 30th, so the docket was wrong. That's true. In that small respect, yes. Okay. But, there's no dispute that they blew the deadline, right? No. The state doesn't dispute that he blew the deadline. That's correct, Your Honor. No dispute. As far as your question about the abuse of discretion, I can't see how this Court rules in favor of the state on that, because the case law here is crystal clear, and I see my time is about to expire. But if I can just finish that point, this Court takes a hard line in applying the pioneer factors. It focuses on the third factor, because all the other factors usually fall in favor of the movement. And inadvertence, lack of diligence, those are, as a matter of law, not adequate reasons to, or those are not sufficient reasons to find excusable neglect. The fourth factor in the excusable neglect standard also happens to be good faith or bad faith. And again, the district court found that the state had engaged in, had acted with bad faith. For those reasons and for the other reasons we set out in our brief, this is not the rare case for this Court to invoke its interest of justice exception, and we respectfully request that the Court affirm the district court's judgment. Thank you. Thank you, Your Honor. First, saying it's inaccurate for the state to say that we generally don't, or we don't as a rule, complain or object if the Court grants an extension. I clerked in the Southern District for seven years. I've been at the AG's office doing habeas for ten years. I promise you, if the courts do this all the time with petitioners, especially pro-seg petitioners, sometimes they send in their objections months late, the courts still consider them. And this is, it's not even a matter of comedy. Comedy is in the interest. Habeas is different. You're sending a guy to jail or you're releasing him. So the courts commonly grant extensions on objections, and we never say anything. I have never, I've been doing this quite a few years, and I clerked, I've never seen it. Now, as you pointed out, statute of limitations is different. Courts do take that seriously. It's statutory. The one-day thing, those cases are not equitable. Both Pioneer and the situation where this Court itself can excuse a default, both equitable. So, yeah, there is a difference, and it's a consideration when we make a minor mistake of a few days. I think our stronger argument is certainly under the suspense factor that this Court can excuse, this Court itself has the discretion to excuse the default, because that factor focuses on the merits of the report. Pioneer, not so much. It focuses on the error itself. Also, on the bad faith, the cases on bad faith talk about toying with the system, like you file an extension to get an advantage. We didn't do that. We, it was... You didn't acknowledge receipt of the November 16th notice until the Court asked you, right? Your Honor, that letter was sent out. We drafted it in haste, got it out the door as soon as possible, within an hour or so of getting the writ that petition was going to be released. It was a panic letter. So, no, I didn't go through all the explanations of that. I got the 16th. But it was on the docket. I'm not so stupid that I think I could fool a district court into misreading her own docket. I mean, I'm not an idiot. I may have made a lot of mistakes here, but I'm not, I should say I'm not crazy. My intent wasn't to fool the court into not seeing what's playing on the docket. I was just trying to explain how I made this stupid, this negligent mistake. I just didn't see the deletion. You know, there's two reports. The first one I calendared. I don't see how that's proof of bad faith. A week later, I calendared that, and it was later. But I didn't see the notice. I just didn't register the notice that deleted that second report. That was the problem. And I didn't read the notice carefully. It said November 29th, which was the wrong date anyway. I'm not sure if my time is up. I think it is. Sorry, Your Honor. If you have any further questions, thank you. Thank you both. We'll take the matter under submission.